# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| WILLIE JAMES HOUSTON | ) |  |
|---|---|---|
| (#2014-0902270), | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | 14 C 9462 |
| v. | ) |  |
|  | ) |  |
|  | ) |  |
| SARGENT JONES and | ) |  |
| OFFICER SIMMONS, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## MEMORANDUM OPINION AND ORDER

CHARLES P. KOCORAS, District Court Judge:

Plaintiff Willie James Houston ("Houston"), an inmate at Cook County Jail, brought this lawsuit pursuant to 42 U.S.C. § 1983 after his cellmate attacked and injured him on September 25, 2014. Houston alleges that, before the attack, he told Defendant Sergeant Jones ("Defendant Jones") that his cellmate had threatened to harm him and that later he conveyed the same information to Officer Simmons ("Defendant Simmons") (collectively "Defendants"). Houston further alleges that both Defendants failed to protect him. Thus, Houston brings deliberate indifference claims against Defendants. Before the Court is Defendants' motion for summary judgment. For the reasons discussed below, Defendants' motion for summary judgment is granted in part and denied in part. Defendant Simmons is dismissed and a hearing pursuant to *Pavey*

*v. Conley*, will be scheduled to resolve the disputed fact issue identified below. 544 F.3d 739, 742 (7th Cir. 2008)

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Under Local Rule 56.1(a)(3), the moving party must provide "a statement of material facts as to which the moving party contends there is no genuine issue" for trial. *Ammons v. Aramark Unif. Services, Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (quoting N.D. Ill. L.R. 56.1(a)); *see also* Fed. R. Civ. P. 56(c). The opposing party must then "file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Cracco v. Vitran, Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (quoting N.D. Ill. L.R. 56.1(b)(3)(B)). The opposing party may also present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008) (citing N.D. Ill. L.R. 56.1(b)(3)(C)). A court may consider true any uncontested fact in the movant's Rule 56.1 Statement that

is supported by the record and is not addressed by the opposing party. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *see also* Fed. R. Civ. P. 56(e)(2); Local Rule 56.1(b)(3)(C).

"District courts are entitled to expect strict compliance with Rule 56.1." *Ciomber*, 527 F.3d at 643 (citations and internal quotation marks omitted). A plaintiff's *pro se* status does not excuse him from complying with these rules. *Greer v. Bd. of Educ. of City of Chi.,* 267 F.3d 723, 727 (7th Cir. 2001); *Cady v. Sheahan,* 467 F.3d 1057, 1061 (7th Cir. 2006) ("even *pro se* litigants must follow rules of civil procedure").

As required by Local Rule 56.1, the Defendants filed a statement of uncontested material facts supporting summary judgment in their favor. (Defs. Stmt. of Fact, R. 28 ("Def. SOF")). Defendants also filed and served on Houston a Local Rule 56.2 Notice, which explains in detail the requirements of Local Rule 56.1. (R. 29.) Houston filed a response to Defendants' motion for summary judgment. (R. 38.) He separately submitted an exhibit, which was his own affidavit. (R. 39.) Within Houston's response, he addressed Defendants' statement of facts. (R. 38, at 6-9.) Houston did not submit a statement of additional facts requiring the denial of summary judgment.

Houston admits many of Defendants' uncontested facts. He admits the facts contained within paragraphs 2, 6, 7, 9, 10, 14, 15 and 16. These facts are therefore taken as true. Houston purports to deny the remainder of Defendants' uncontested

facts. As to these statements, the Court will not deem a fact uncontested where the Defendants' statement of that fact does not comply with the requirements of Local Rule 56.1 or lacks evidentiary support. As to Defendants' compliant statements of fact, Houston cannot create genuine issues of material fact by relying upon legal arguments, conclusions or suppositions (*see*, e.g., R. 38, at 9), which do not constitute "facts." *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008); *see also Almy v. Kickert Sch. Bus Line, Inc.*, No. 08-CV-2902, 2013 WL 80367, at *2 (N.D. Ill. Jan. 7, 2013) ("[C]ourts are not required to 'wade through improper denials and legal arguments in search of a genuinely disputed fact.'") (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)).

The Court also will disregard denials that conflict with Houston's sworn deposition testimony. "[L]itigants 'cannot create sham issues of fact with affidavits that contradict their prior depositions.'" *Janky v. Lake Cnty. Convention & Visitors Bureau*, 576 F.3d 356, 362 (7th Cir. 2009) (quoting *Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 592 (7th Cir. 2007)).

As to the facts Houston seeks to add to the record to defeat Defendants' motion, *see* Rule 56.1(b)(3)(C), he has not followed Rule 56.1 in several ways. First, he improperly inserted additional facts into his response to Defendants' local Rule 56.1(a)(3) statements. (*See, e.g.*, R., 38, at 6-9.) Such statements must be ignored because Rule 56.1 requires that additional facts be raised through a statement of

4

additional facts under Local Rule 56.1(b)(3)(C). Second, Houston submits additional facts through his legal brief. (R. 38, at 2-5.) But facts submitted "in a brief but not presented in a Local Rule 56.1 statement are disregarded in resolving a summary judgment motion." *Beard v. Don McCue Chevrolet, Inc.*, No. 09 C 4218, 2012 WL 2930121, at *5 (N.D. Ill. July 18, 2012). Third, as noted above, Houston has not added additional facts through a statement of additional material facts. Accordingly, Houston has not properly provided additional facts for consideration.

The Court will, in general, incorporate Houston's factual assertions to the extent that they are additional facts relevant to the Court's analysis, are supported by record evidence, or are such that Houston properly could testify to them at trial. The Court further will rely upon Houston's references to exhibits where they are relevant to the Court's analysis and may be admissible at trial. The Court will not, however, dig through the record to identify disputed issues of fact. *See Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) ("In considering a motion for summary judgment, the district court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies."). With these guidelines established, the Court turns to the facts of this case.

## II. Facts

Houston alleges that he was processed into Cook County Jail ("CCJ") on September 2, 2014. (Compl., R. 7, at 4.) Houston's cellmate allegedly threatened him, and, on September 23, 2014, Houston told Defendant Jones about the threats and his concerns for his safety due to his cellmate's violent history. (*Id*.) Late on September 24, 2014, Houston told Defendant Simmons of his cellmate's threats to harm him. (*Id*. at 4-5.) Neither Defendant Jones nor Defendant Simmons acted on Houston's information. In the early morning hours of September 25, 2014, Houston's cellmate physically attacked him, causing injuries. (*Id*. at 5; *see also* Def. 56.1 Stmt. ¶ 1.)

The Cook County Department of Corrections ("CCDOC") requires inmates to exhaust administrative remedies under the Inmate Grievance Procedure, which was available to detainees in 2014. (Def. 56.1 Stmt. ¶¶ 4, 5.) The Inmate Grievance Procedure requires an inmate to submit a grievance within fifteen (15) days of the event of which the inmate complains. (*Id*. ¶ 5.)

Although Houston denies receiving a copy of the Inmate Handbook upon his arrival at the CCJ, he testified that he "pretty much" understood how the grievance process worked. (*Id*. ¶ 3; Pl. Dep., R. 28-1, at 34.) Houston authored a grievance, dated October 11, 2014, ("October 11th grievance") regarding the September 25, 2014, attack. (Def. 56.1 Stmt. ¶ 6.) The pre-printed grievance form Houston used provided

information and instructions. For example, beneath the heading "INMATE'S BRIEF SUMMARY OF THE COMPLAINT," the form provides that "[a]n inmate wishing to file a grievance is required to do so within 15 days of the event he/she is grieving." (R. 28-4, at 4.) The form requested that the inmate provide the date, time, and location of the incident, the names of staff or inmates with information regarding the request, and the action that the inmate requests through the grievance. (*Id*.)

In his grievance, Houston complained that Defendant Jones could have, but failed to, protect him from his cellmate. (Def. 56.1 Stmt. ¶¶ 1, 19; R. 28-4, at 4.) He did not identify any other "personnel or inmate(s) having information regarding this complaint." (R. 28-4, at 4.) Houston sought "to be housed in Div. Eleven and given $1,000.00 for my injuries." (*Id*.) Houston's grievance was processed as a "NON-GRIEVANCE (REQUEST)" and denied as untimely on October 22, 2014 ("October 22 response"). (Def. 56.1 Stmt. ¶¶ 9, 10; R. 28-4, at 5.) A handwritten portion of the October 22 response informed Houston that he could resubmit his grievance if he thought he had grounds for reconsideration. (*Id*. ¶ 12.) Houston was told that "an administrative review will be conducted" if he "provide[d] a full detailed explanation for the submission delay." (R. 28-4, at 5.) Houston did not resubmit his grievance. (*Id*. ¶ 13.) The section titled "INMATE'S REQUEST FOR AN APPEAL" was struck through in the October 22 response. (R. 28-4, at 5.)

Houston brought this lawsuit under 42 U.S.C. § 1983, alleging that both Defendant Jones and Defendant Simmons were deliberately indifferent to a serious risk to his safety from his cellmate. (Compl., R. 7, at 6.) Houston was allowed to proceed on his claims against Defendant Jones and Defendant Simmons; Defendant Tom Dart was dismissed. (R. 6.) Defendant Jones and Defendant Simmons now move for summary judgment.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. To do so, the opposing party must go beyond the pleadings and designate specific facts showing the existence of a genuine issue for trial. *Hemsworth*, 476 F.3d at 490. Moreover, evidence submitted in opposition to summary judgment must be admissible at trial under the Federal Rules

of Evidence, although attested testimony, such as that found in depositions or affidavits, also will be considered. *Id.*; *Scott v. Edinburg*, 346 F.3d 752, 759-60 & n.7 (7th Cir. 2003). The Court's job as to "a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contest, or decide which inferences to draw from the facts." *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). Although a Court considers facts and reasonable inferences in the light most favorable to the non-moving party, *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014), the non-movant must show more than disputed facts to defeat summary judgment—disputed facts must be both genuine and material. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Summary judgment is appropriate if, on the evidence provided, no reasonable juror could return a verdict in favor of the non-movant. *Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772-73 (7th Cir. 2012).

## ANALYSIS

Defendants moved for summary judgment, on the basis that Houston failed to exhaust his administrative remedies prior to filing this lawsuit. The Prison Litigation Reform Act ("PLRA") requires an inmate to properly exhaust available administrative remedies by following to completion the procedural rules for grievances within a penal institution. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004) (noting that prisoner must "take all steps prescribed by the

prison's grievance system"); 42 U.S.C. § 1997e(a). Accordingly, an inmate must submit complaints and any appeals "in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

An inmate, however, must exhaust only such administrative remedies as are "available" to him. 42 U.S.C. § 1997e(a). The availability of administrative remedies is not "a subjective inquiry—that is, dependent upon the knowledge of the prisoner in question." *Harper v. Dart*, No. 14 C 01237, 2015 WL 3918944, at *7 n.4 (N.D. Ill. June 24, 2015) (citing *Twitty v. McCoskey*, 226 F. App'x 594, 596 (7th Cir. 2007) ("As the Eighth Circuit has observed, 42 U.S.C. § 1997e(a) 'says nothing about a prisoner's subjective beliefs, logical or otherwise, about administrative remedies that might be available to him.'") (quoting *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000))). On the contrary, an inmate's mere "lack of awareness of a grievance procedure . . . does not excuse compliance." *Twitty*, 226 F. App'x at 596.

Nonetheless, jail authorities may not affirmatively mislead an inmate regarding available procedures. *See Id*. Further, "[p]rison officials cannot immunize themselves from suit by establishing procedures that *in practice* are not available because they are impossible to comply with or simply do not exist." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015) (emphasis added). Accordingly, although authorities may not establish non-exhaustion based upon an inmate's failure to follow

unwritten or unavailable rules, *see id*. at 896; *Thomas v. Reese*, 787 F.3d 845, 847-48 (7th Cir. 2015), "reasonably publicized procedures must be exhausted." *Harper*, 2015 WL 3918944, at *3. "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Pavey v. Conley*, 663 F.3d 899, 905 (7th Cir. 2011). Defendants bear the burden of demonstrating non-exhaustion. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Where there remain in dispute factual issues relating to the defense of failure to exhaust administrative remedies, the judge must decide those issues through a *Pavey* evidentiary hearing. *Pavey*, 544 F.3d at 742.

Defendants argue that Houston failed to exhaust the available administrative remedies because he did not: (1) file a grievance as to Defendant Simmons; (2) originally submit his grievance within 15 days of the events he grieved; and (3) resubmit his grievance as a request after he received the October 22 response that informed him that he could do so. The Court will address each argument in turn.

### 1. Failure To File A Grievance Regarding Defendant Simmons

Defendants first contend that Houston failed to exhaust his administrative remedies because he failed to file a grievance as to Defendant Simmons. Houston concedes that his sole grievance made no reference to Defendant Simmons or the facts involving her. Instead, Houston seems to argue that because Defendant Jones was a

supervisor it was sufficient to name Defendant Jones in the grievance form. (R. 38, at 5.)

To exhaust administrative remedies, an inmate need not always identify with a grievance form the jail personnel responsible for the alleged constitutional violation. *See Jones v. Bock*, 549 U.S. 199, 218 (2007); *Maddox v. Love*, 655 F.3d 709, 722-23 (7th Cir. 2011). In *Maddox*, the Seventh Circuit held that the inmate had exhausted his administrative remedies, although he did not name or describe any individuals in his grievance. 655 F.3d at 721-23. First, the prison had never questioned the inmate's compliance with the grievance process while that process was ongoing; instead, the prison ruled on the merits of the inmate's grievance, rather than rejecting it based on its procedural deficiencies. *Id*. at 721-22. Second, the inmate grieved a particular administrative decision specific enough for the prison to identify the individual responsible simply from the subject matter of the grievance itself. *Id*. at 722. Finally, the grievance form did not request that the inmate provide the names of the involved personnel. *Id*. Accordingly, the plaintiff's failure to name the defendants in the grievance was a "mere technical defect" that did not in fact affect the grievance process or "limit the usefulness of the exhaustion requirement." *Id*.

However, where the grievance form requires an inmate to provide identifying information regarding responsible officers, and the inmate's grievance and relevant circumstances do not allow even an inference that the inmate is complaining of a

particular official, the grievance may be insufficient to exhaust the inmate's administrative remedies as to that official. *See Ambrose v. Godinez*, 510 F. App'x 470, 472 (7th Cir.) (holding that "the district court properly narrowed the case" by dismissing two defendants where "no grievance mention[ed either defendant] by name or inference"), *cert. denied,* 134 S. Ct. 270 (2013); *Woods v. Schmeltz*, No. 13-CV-1477, 2014 WL 3490569, at *4 (C.D. Ill. July 14, 2014) (finding that plaintiff did not exhaust administrative remedies as to one defendant where he failed to name a defendant in grievance, and omission was such that prison officials could not have discovered it); *Flemming v. Shah*, No. CIV. 12-761-GPM, 2013 WL 3033102, at *6 (S.D. Ill. June 17, 2013) (dismissing defendant where "grievance itself [did] not place Brown, or the institution, on any notice of the claims against her nor could it be extrapolated that Plaintiff [was] asserting some claim against her"); *Boclair v. Hulick*, No. 10-CV-0978-MJR-SCW, 2012 WL 878219, at *4 (S.D. Ill. Mar. 14, 2012) ("[U]nlike *Maddox,* nothing in Boclair's grievance alerted prison officials that Maue or Liefer [were] responsible for the decision to move Plaintiff in with Denton, and the mere nature of Maue and Liefer's jobs did not indicate that they necessarily or likely would have been involved in the transfer decision which Plaintiff claims Tina Beardan Monroe orchestrated to retaliate against him.").

Here, the grievance form Houston used required him to identify the "name of personnel or inmate(s) having information regarding this complaint." (R. 28-4, at 4.)

Houston left that portion blank and in the body of his sole grievance mentioned only a pre-attack conversation with "Sergeant Jones (3-11)." (*Id*.) There was no indication from the grievance he submitted—in the description of events, in the subject matter of the grievance, or the section of the form requiring Houston to name any personnel having information—that Houston had any complaint regarding Defendant Simmons or that she (or any person other than Defendant Jones) might have been involved in the events preceding his cellmate's attack. (*Id*.)

Houston also did not file a separate grievance against Defendant Simmons, and, unlike the plaintiff in *Maddox*, Houston's sole grievance did not complain of an identifiable administrative or policy decision, for which jail officials likely could have identified responsible parties merely from the subject matter. Instead, Houston complained of the inaction and deliberate indifference of a single jail official, Defendant Jones, based on a conversation he had with only Defendant Jones on September 23, 2014. He now complains that a different officer, Defendant Simmons, violated his rights, based upon an entirely separate conversation he had with her, at least a day after he spoke to Defendant Jones. Under these circumstances, Houston's failure to provide any clue in his grievance form that he believed Defendant Simmons (or any person other than Defendant Jones) violated his rights effectively foreclosed any discovery of his omission at the grievance stage or any action or investigation regarding Defendant Simmons prior to this lawsuit. Nor does the fact that Defendant Jones is a

supervisor correct Houston's omission where, as here, the grievance Houston submitted provided no reason to examine or investigate the individuals that Defendant Jones may have supervised. Because Houston failed to raise in a grievance that he believed Defendant Simmons had violated his rights, Houston failed to exhaust his administrative remedies as to Defendant Simmons. Thus, Defendants' motion is granted as to Defendant Simmons, and she is dismissed without prejudice.

### 2. Timeliness Of Grievance

Defendants next argue that Houston failed to exhaust his administrative remedies because his grievance was submitted more than 15 days after the events of which he complained. Houston concedes that he submitted his grievance beyond the 15-day deadline but contends that he was ignorant of the deadline because he was not provided with a copy of the inmate handbook upon his arrival at the jail. (R. 38, at 5.) Essentially, Houston argues that the grievance process was "unavailable" to him because he did not know of the 15-day deadline. Genuine issues of fact remain disputed regarding this issue.

Here, jail officials explicitly denied Houston's grievance because of his failure to comply with jail procedures regarding the timing for submitting a grievance. *See Maddox*, 655 F.3d at 721-22 (noting that, where officials reach the merits of an inmate's grievance, rather than relying upon procedural shortcomings, the inmate may be found to have exhausted his or her administrative remedies). However, it is unclear whether

the relevant portion of the CCDOC's grievance procedure—specifically, the information regarding the deadline for submitting a grievance—was available to Houston prior to his grievance. Defendants state that the process was "available to all detainees" but do not specify the means. (Def. 56.1 Stmt. ¶ 4.) Houston denies receiving the inmate handbook or having knowledge of the grievance submission deadline, but the grievance form he used explicitly informed him of that deadline, (R. 28-4, at 4), suggesting that the key information may have been available to Houston through means other than the inmate handbook. *See Price v. Dart*, No. 14 C 4630, 2015 WL 3798435, at *3 (N.D. Ill. June 17, 2015) (Kocoras, J.) (finding that, although inmate stated that he was not given inmate handbook or verbal notification of grievance appeal process, grievance form itself adequately informed inmate of time for appeal). Houston also acknowledges that the "material may have been circulating in the CCDOC in 2014" or that it might have been "available to all detainees upon request." (R. 38, at 2-3.) As noted above, it is not Houston's subjective knowledge that matters; it is whether the relevant information—the 15-day deadline—was "available" to Houston within the meaning of the PLRA; in other words, whether the 15-day deadline was "reasonably publicized." Genuine issues of material fact remain in dispute regarding this issue. Accordingly, Defendants' motion is denied as to this issue. As set forth below, if Defendant Jones wishes to present evidence on this issue in a hearing

pursuant to *Pavey v. Conley*, he may so inform the Court at the upcoming status. 544 F.3d 739, 742.

### 3. Resubmission Of Grievance After Denial

Defendants finally argue that Houston did not exhaust his administrative remedies because he did not resubmit his grievance after receiving the October 22 response. Houston argues that he wanted to appeal the denial of his grievance but could not because the responding official had struck through the appeal portion of the response. (R. 38, at 4.) He also argues that he was excused from further pursing administrative remedies because monetary damages were unavailable through that process. (*Id.*)

The effacement of the appeal portion of the grievance response excused Houston from submitting an appeal of the denial of his October 11th grievance. Thus, to the extent that Defendants argue that Houston should have appealed that response, their motion is denied.

Defendants' key argument seems to be that, per the handwritten response to Houston's grievance, Houston was informed that he could "resubmit the grievance and provide a full detailed explanation for the submission delay" to trigger an "administrative review." (R. 28-4, at 5.) Houston claims he avoided this process because the response also informed him that monetary damages were unavailable in the grievance process. (R. 38, at 4.) The unavailability of an inmate's preferred remedy

in the grievance system, however, does not excuse him from exhausting the available process. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001) (rejecting plaintiff's argument that exhaustion requirement did not apply where monetary relief was unavailable and stating "we think that Congress has mandated exhaustion clearly enough, regardless of the relief sought through administrative procedures"). In any case, Houston sought more than monetary damages, including a change in housing. Nonetheless, Defendants cite only a handwritten note, rather than to policy or procedures, in support of their argument that, to exhaust, Houston should have resubmitted an apparently untimely grievance that had been recharacterized as a request.[1] This is insufficient to carry their burden, and no genuine facts remain in dispute. Defendants' motion is denied as to this issue.

## CONCLUSION

For the reasons stated in this Memorandum Opinion and Order, Defendants' motion for summary judgment [26] is granted in part and denied in part. Defendant Simmons is dismissed and terminated. Defendants' motion is denied in all other respects. This case is set for status on January 21, 2016. Defendant Jones should be prepared at this status to notify the Court whether he wishes to pursue an evidentiary

---

[1] Defendants do not explain the procedural basis for the response re-designating Houston's grievance as a "NON-GRIEVANCE (REQUEST)." (See R. 28-4, at 4.) The inmate handbook specifies which topics are deemed "requests," (R. 28-4, at 28), and Houston's grievance does not appear to relate to those topics. Instead, his grievance appears to address issues for which inmates are permitted to file grievances. (*Id*. at 28-29.) There has, in recent years, been considerable confusion regarding the grievance/request processes in CCDOC. *See Harper*, 2015 WL 3918944, at *3-*7.

hearing, pursuant to *Pavey v. Conley*, regarding the availability of information regarding the CCDOC's 15-day deadline for submitting grievances. 544 F.3d at 742. The parties should be prepared at the status to set a date for a *Pavey* evidentiary hearing.

Date:   12/22 /2015   _____
                      Charles P. Kocoras
                      United States District Court Judge